UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT WEINSTEIN,

    *Plaintiff*,

v.

CHRISTOPHER GEYER,

    *Defendant*.
_____/

CASE NO. 12-CV-12923

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 25)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be **GRANTED**.

## II. REPORT

### A. Introduction

Plaintiff Robert Weinstein ("Plaintiff") filed this diversity action in July 2012, alleging that Defendant Christopher Geyer ("Defendant") knowingly and wrongfully misappropriated, retained, and used "Plaintiff's assets and property for his own use and enjoyment without Plaintiff's knowledge or permission to do so." (Compl. ¶ 5.) More specifically, Plaintiff alleges that from "December 2011 to the present, the assets and property misappropriated, retained, and used by Defendant included tens of thousands of dollars' worth of snowmobiling equipment, a trailer, a Cadillac Escalade, and other property and assets . . . ." (*Id*. ¶ 6.) Plaintiff asserts that Defendant

"maintained control" of this property "at his residence, without Plaintiff's knowledge or permission." (*Id.* ¶ 7.) Plaintiff asserts a claim of common law conversion (Count I), for which he seeks actual damages and punitive damages, as well as a claim of statutory conversion under Michigan law, Mich. Comp. Laws § 600.2919a (Count II), for which he seeks three times the amount of actual damages, as well as costs and attorneys' fees. (*Id.* ¶¶ 8-9.)

On August 23, 2013, Defendant filed the motion for summary judgment that is before the Court (Doc. 25), arguing that (1) this Court lacks jurisdiction because the amount in controversy is less than $75,000; and (2) Defendant's actions cannot be considered common law or statutory conversion where at all times "the use and/or storage of the property has been with the permission, knowledge and consent of Plaintiff's wife[,]" Ann Clayton-Weinstein,[1] who is an owner of the property in question. (Doc. 25 ¶ 14.) Defendant contends that "Plaintiff filed the frivolous conversion claims after his wife filed for divorce proceedings in New York." (*Id.* ¶ 4.)

Plaintiff responded in opposition on September 26, 2013. (Doc. 27.) A hearing was held on October 15, 2013. Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation.

**B.    Motion Standards**

A motion for summary judgment will be granted under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

[1]Mrs. Clayton-Weinstein is referred to variously in the case documents as "Ann Clayton," "Ann Elizabeth Clayton," "Annie Clayton," and "Ann Clayton-Weinstein." The Court will consistently utilize the latter version for the sake of clarity.

2

574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary

3

judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C. Analysis & Conclusions

#### 1. Jurisdiction

The federal diversity statute provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). In this case, although Plaintiff owns a home in Indian River, Michigan (Doc. 25, Br. at 1), it is asserted that Plaintiff is a resident of the State of New York and that Defendant is a resident of the State of Michigan, so the diversity-of-citizenship requirement is met.

With regard to the amount-in-controversy requirement, "[g]enerally, the amount claimed by the plaintiff in the complaint rules, as long as claimed in good faith, and '[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'" *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938). The Sixth Circuit has noted that the "test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits in only a very superficial way." *Kovacs v. Chesley*, 406 F.3d 393, 396 (6th Cir. 2005). "In the amount in controversy context, 'most courts have found a legal certainty that more than the jurisdictional amount could not be recovered only where the applicable state law barred the *type of damages* sought by the plaintiff.'" *Id.* (quoting *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973) (emphasis in original).

The Complaint in this case asserts that Plaintiff seeks recovery in an amount equal to three times the value of two snowmobiles, a trailer, and a Cadillac Escalade, in addition to punitive

4

damages. (Doc. 1 ¶¶ 8-9.) In light of these claims and the value associated with the items in question, I suggest that it is likely that Plaintiff's damages would exceed $75,000 if Defendant is found liable to Plaintiff, and therefore that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

### 2. The Conversion Claims

#### a. Common Law Conversion

"Conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Patchel v. Thompson's Estate*, 193 N.W. 852, 854 (Mich. 1923). It flows logically from this definition that "a person cannot convert his own property." *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992) (citation omitted). Conversion is

> generally committed by intentionally dispossessing another of a chattel, or refusing to surrender a chattel on demand. Broadly stated, to constitute an unlawful conversion there must be a finding that: (1) the plaintiff had a property right in and a right to immediate possession of personal property in the defendant's hands at the time of conversion; (2) plaintiff made a legal demand for the property; and (3) the defendant under these circumstances refused to deliver the property to the plaintiff. The "gist" of a conversion claim is that the defendant has interfered with the plaintiff's control and use of his or her property.

6 Mich. Civ. Jur. *Conversion* § 2 (2013).

#### b. Statutory Conversion

"Statutory conversion consists of knowingly buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." *Lawsuit Financial, L.L.C. v. Curry*, 683 N.W.2d 233, 241 (Mich. Ct. App. 2004) (citing Mich. Comp. Laws § 600.2919a). The conversion statute "provides a remedy against the accomplice only and not against the person who actually stole,

5

embezzled, or converted the property." *Echelon Homes, L.L.C. v. Carter Lumber Co.*, 683 N.W.2d 171, 180 (Mich. Ct. App. 2004), *rev'd in part on other grounds*, 694 N.W.2d 544(2005).

    **c.**    **Analysis & Conclusions**

In this case, Defendant has attached to his motion for summary judgment unrefuted evidence that the snowmobiles and snowmobile trailer were purchased by Ann Clayton-Weinstein, Plaintiff's wife, using a credit card bearing her name alone, and that these items were titled solely in her name. (Doc. 25 at Exs. B-E.) There is also no dispute that Ann Clayton-Weinstein was married to Plaintiff at the time, and at the hearing all parties agreed that all of the allegedly converted items were owned by Plaintiff and his wife as marital assets. *See Cunningham v. Cunningham*, 795 N.W.2d 826, 830 (Mich. Ct. App. 2010) ("Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage."). Counsel for Plaintiff highlights this fact in his brief, noting that Defendant "has admitted his understanding that the money used to purchase the snowmobiles came from Mr. and Mrs. Weinstein's marital assets." (Doc. 27, Br. in Supp. at 8.) Further, Ann Clayton-Weinstein's affidavit clearly states that "all of the property Plaintiff claims as being converted by Christopher Geyer was either owned by myself and/or owned jointly with Plaintiff"; that "at no time did the Defendant . . . use, possess or control the snowmobiles without my permission"; that the snowmobile trailer "with my permission, has been stored on property owned by [Defendant's] mother"; and that "at no time did the Defendant . . . use, possess or control the Cadillac Escalade without my permission." (Doc. 25 at Ex. F.)

Pursuant to Michigan law set forth above, Defendant could only be guilty of statutory conversion if the underlying property was converted by Ann Clayton-Weinstein, and I suggest that

no reasonable jury faced with the evidence of record could make such a finding when applying Michigan law, since an owner of property "cannot convert his own property." *Foremost*, 486 N.W.2d at 606. If the property could not be converted by Ann Clayton-Weinstein, Defendant could not be liable under Michigan Compiled Laws § 600.2919a for aiding in conversion.[2]

With regard to common law conversion, I likewise suggest that the evidence is so one-sided that Defendant must prevail as a matter of law. *See Booker,* 879 F.2d at 1310. The unrefuted evidence demonstrates that at all times Defendant was acting under the direction of and with the permission of an owner of the property to use and store the items in question, and there has been no evidence presented that Plaintiff, as a co-owner of the marital assets, ever made a demand for access to or possession of any the items in question that was refused by Defendant. *See* 6 Mich. Civ. Jur. Conversion § 2 (2013); *Patchel*, 193 N.W. at 854. Likewise, Plaintiff has presented no evidence that Defendant ever asserted to anyone that he was the owner of the snowmobiles, trailer, or vehicle. *See Patchel*, 193 N.W. at 854 ("Possession must be accompanied by such a use and control and the assertion of ownership rights as to necessarily lead to the conviction that a demand would have been useless.")

Instead, Plaintiff grounds his arguments on several alleged peripheral circumstances which apparently, in his view, overtake the central facts discussed above, such as the allegations that: Ann Clayton-Weinstein was having a romantic relationship with Defendant; Ann Clayton-Weinstein "misrepresented to [Plaintiff] about the location, purpose, and possession" of the snowmobiles (Doc. 27, Br. at 11); Ann Clayton-Weinstein did not generate any income and

---

[2]Plaintiff cites *Topelian v. Topelian*, No. 259814, 2006 WL 1932986 (Mich. Ct. App. July 13, 2006) (unpublished), for the proposition that a spouse can be liable for conversion of a marital asset when done so in contemplation of divorce. (Doc. 27, Br. at 10.) *Topelian*, however, was a divorce action where the court held that the division of marital property should be altered because one spouse "concealed or converted three marital assets," *id*. at *4, which is clearly distinguishable from this action for common law and statutory conversion.

7

therefore the funds used to pay her credit card debt must have come from Plaintiff; and Defendant must have known that Plaintiff would not have authorized his wife's purchase of these items or Defendant's use and storage of them. While these allegations may be relevant to the Weinstein divorce proceeding which, according to the parties, is currently pending in the State of New York, I cannot discern any relevance to the allegations of conversion brought in this case under Michigan law.

Accordingly, I suggest that Defendant's motion for summary judgment be **GRANTED** and the case dismissed.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                           s/ *Charles E Binder*
                                           CHARLES E. BINDER
Dated: November 12, 2013             United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Notice was electronically filed this date, and electronically served on Craig Horn, Brigham Bell, John Chasnis, and John Danieleski, Jr..

Date:  November 12, 2013             By     s/*Jean L. Broucek*
                                                           Case Manager to Magistrate Judge Binder